OPINION
{¶ 1} Jeffrey A. Finfrock appeals from the judgment of the trial court which overruled his motion to suppress statements he gave to the Columbus Division of Police. He assigns two errors for our consideration:
 {¶ 2} "I. The trial court erred in overruling Appellant's motion to suppress statements to the Columbus Division of Police, as they were obtained involuntarily and in violation of his rights under theFifth Amendment to the United States Constitution and comparable provisions of the Ohio Constitution.
 {¶ 3} "II. The trial court erred in overruling Appellant's motion to suppress statements made to the Columbus Division of Police, as these statements were obtained in violation of Miranda v. Arizona."
 {¶ 4} Because his two assignments of error address many common issues, we will address the assignments of error jointly.
 {¶ 5} Mr. Finfrock was indicted on January 11, 2002, and charged with a single count of receiving stolen property, a felony of the fourth degree because the property in question was a motor vehicle. Mr. Finfrock initially entered a plea of "not guilty" at arraignment and counsel was appointed to represent him.
 {¶ 6} On March 12, 2002, counsel filed a motion to suppress statements obtained from Mr. Finfrock. A hearing on the motion to suppress was held on August 20, 2002. Two witnesses testified at the hearing. The first witness was Kevin Whaley, an employee of the Ohio Adult Parole Authority who had Mr. Finfrock under his supervision on January 3, 2002. The second witness was Martin Malone, a detective with the Columbus Division of Police Auto Theft Unit.
 {¶ 7} Mr. Whaley testified that he placed Mr. Finfrock in custody on January 3, 2002. Mr. Whaley then questioned Mr. Finfrock without providing any of the warnings required by Miranda v. Arizona (1966),384 U.S. 436. Mr. Whaley also informed Mr. Finfrock that he (Whaley) could help or hurt Mr. Finfrock with the counts if he were cooperative and truthful. The statements given to Mr. Whaley were ordered to be suppressed by the trial court and are not directly an issue on appeal.
 {¶ 8} After the interview with Mr. Whaley, Mr. Finfrock was interviewed by Detective Martin Malone. Mr. Finfrock had driven an Audi up to his interview with Mr. Whaley, not being aware that Mr. Whaley intended to arrest him. Mr. Whaley believed that Mr. Finfrock was involved with stolen cars, so he had inquired about a car stolen in Union County and the identity of the car Mr. Finfrock drove on January 3, 2002. Following Mr. Finfrock's statement about the Audi he drove to see Mr. Whaley, Mr. Finfrock was transported to the Columbus Division of Police Auto Theft Unit.
 {¶ 9} Detective Malone interviewed Mr. Finfrock about the Audi, which was recovered from a restaurant near the Ohio Adult Parole Authority. Detective Malone gathered information about the stolen Audi and then administered the warnings set forth in Miranda. Mr. Finfrock signed a waiver form and began discussing the Audi with Detective Malone.
 {¶ 10} After Mr. Finfrock had discussed the Audi with Detective Malone, Detective Malone began inquiring about other stolen vehicles. When Detective Malone expanded the scope of his questioning, Mr. Finfrock stated he did not want to answer any more questions. The interviewed ceased.
 {¶ 11} Detective Malone acknowledged that he questioned Mr. Finfrock about the Audi because Detective Malone received a telephone call from Mr. Whaley or a supervisor of Mr. Whaley on the subject.
 {¶ 12} Under these circumstances, the question before the trial court was whether or not Detective Malone obtained a knowing, intelligent and voluntary waiver of Mr. Finfrock's Fifth Amendment rights before questioning Mr. Finfrock about the stolen Audi. In addressing this issue, we are required to consider the totality of the circumstances surrounding the second interview of Mr. Finfrock. See State v. Edwards (1976), 14 Ohio St.2d 31.
 {¶ 13} If Mr. Finfrock had been interviewed by Detective Malone first, the trial court's ruling on the motion to suppress would be clearly correct. However, some of the circumstances presented to the trial court included questions about the voluntariness of the statements obtained by Mr. Whaley, the finding and impounding of the Audi as a result of statements and the promise/threat made by Mr. Whaley that Mr. Whaley could help or hurt Mr. Finfrock with a trial court judge. After the interview by Mr. Whaley, Mr. Finfrock provided no new information to Detective Malone. Instead, Mr. Finfrock only repeated some or all of the same information. When Detective Malone tried to obtain new information, Mr. Finfrock invoked his Fifth Amendment rights.
 {¶ 14} The state of Ohio argues that Oregon v. Elstad (1985),470 U.S. 298, 105 S.Ct. 1285, supports the ruling of the trial court. The state particularly cites us to a portion of the opinion set forth at page 314:
 {¶ 15} "`* * * [A]bsent deliberately coercive or improper tactics in obtaining the initial statement, the mere fact that a suspect has made an unwarned admission does not warrant a presumption of compulsion. A subsequent administration of Miranda warnings to a suspect who has given a voluntary but unwarned statement ordinarily should suffice to remove the conditions that precluded admission of the earlier statement. In such circumstances, the finder of fact may reasonably conclude that the suspect made a rational and intelligent choice whether to waive or invoke his rights."
 {¶ 16} The central holding in the Elstad case is that the Self-Incrimination Clause of the Fifth Amendment does not require the suppression of a confession, made after proper Miranda warnings and a valid waiver of rights, solely because the police had obtained an earlier voluntary but unwarned admission from the suspect.
 {¶ 17} The trial court, in ruling on the motion to suppress with respect to the Whaley statement noted that the Miranda warnings had not been given by Mr. Whaley and suppressed the statements without addressing the other issues involving voluntariness. In ruling the statements to Detective Malone were admissible, the trial court addressed the case only as a Miranda warnings case and again did not perform any voluntariness analysis. The totality of the circumstances was not addressed either expressly or implicitly with respect to either interview.
 {¶ 18} The trial court's findings do not present us with the situation set forth in Elstad, so the Elstad case does not dictate a particular result on appeal. As an appellate court, we could move forward to address the voluntariness issues which the trial court did not address. However, the initial ruling on the voluntariness issues is better made by the trial judge who actually heard the testimony of the witnesses and who can better assess their credibility.
 {¶ 19} We, therefore, sustain the assignment of error in part. We vacate the trial court's ruling with respect to the statements obtained by Detective Malone and remand the case for further factual findings with respect to voluntariness. Because we are vacating the ruling which resulted in Mr. Finfrock's plea of no contest, we must vacate the judgment and sentence of the trial court.
 {¶ 20} Both assignments of error are sustained to the extent indicated above. The judgment of the trial court is vacated and the case is remanded for further proceedings consistent with this opinion.
Judgment vacated and cause remanded.
LAZARUS and BRYANT, JJ., concur.